THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANCIS M. CAMPO, Jr., et al. | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | Civil No. 06-4332 (JBS) |
| v. | |
| OXFORD HEALTH PLANS, INC. et al. | **OPINION** |
| Defendants. | |

APPEARANCES:

William B. Hildebrand, Esq.
LAW OFFICES OF WILLIAM B. HILDEBRAND
1040 Kings Highway North, Suite 601
Cherry Hill, NJ 08034
    Attorney for Plaintiffs Francis M. Campo, Jr., Tina E.
    Campo, Domencia Campo, and Lorenzo Campo

Francis X. Manning, Esq.
STRADLEY, RONON, STEVENS & YOUNG, LLP
Woodland Falls Corporate Park
210 Lake Drive East, Suite 102
Cherry Hill, NJ 08002
    Attorney for Defendant Oxford Heath Plans, Inc.

**SIMANDLE, District Judge:**

    This matter arises out of the cancellation of Plaintiffs'
employer-sponsored health insurance policy and Plaintiffs having
incurred over $300,000 in medical bills as a result of their lack
of health insurance.  Specifically, Plaintiffs bring this action
against Oxford Heath Plans, Inc. and Green Giant Nursery &
Landscaping, Inc. alleging that these defendants violated the
Employment Retirement Security Act, 29 U.S.C. § 1001 et seq.
("ERISA") and New Jersey law when they cancelled Plaintiffs'

health insurance policy and failed to provide Plaintiffs with certain information regarding Plaintiffs' right to elect to continue their health insurance coverage after one of the Plaintiffs (Francis Campo) was terminated by his employer, Green Giant.[1] This matter is before the Court upon Defendant Oxford Heath Plans, Inc.'s motion to dismiss Counts Two, Four, Five and Seven of the Second Amended Complaint.

The Court will grant Oxford's motion and dismiss Counts Two, Four, Five and Seven of the Second Amended Complaint with respect to Oxford.  Count Five of the Second Amended Complaint will be dismissed because Plaintiffs concede that the inclusion of Oxford as a defendant in Count Five was a typographical error.  The Court will also grant Oxford's motion and dismiss Counts Two, Four and Seven because these claims fail to state a claim against Oxford.

## I.   BACKGROUND

### A.   The Facts

Plaintiffs are Francis M. Campo, Jr. and Tina E. Campo (and their children Domencia Campo, and Lorenzo Campo) who reside in Washington Township, New Jersey.  (Second Am. Compl. ("SAC") ¶

---

[1]  The Court notes that also pending before the Court is a motion for leave to amend the Second Amended Complaint in order to add two additional individual defendants (Louis W. Cappucio and Diana Perez).  The pendency of Plaintiffs' motion for leave to amend does not impact Oxford Health, Inc.'s motion to dismiss and will be the subject of another opinion before this Court.

5.)   Beginning in May of 2005, Francis Campo began working for Defendant Green Giant Nursery and Landscaping, Inc. ("Green Giant") as a laborer.[2]  (Id. ¶ 11.)  As a benefit of his employment with Green Giant, Plaintiff and his family were provided with group health insurance coverage through Oxford Health Plans, Inc. ("Oxford").  (Id.)

On September 29, 2005, Green Giant terminated Francis Campo. (Id. ¶ 12.)  In Campo's termination letter, Green Giant stated that his health insurance coverage would continue for ninety days and that Oxford would contact him regarding the exact termination date of coverage.  (Id.; Ex. D.)  Also in the termination letter, Green Giant indicated that Plaintiff was eligible for health insurance coverage under COBRA and enclosed certain information about COBRA coverage.  (Id.)  On December 27, 2005, Green Giant sent Oxford completed COBRA application forms, requesting that Oxford provide COBRA insurance coverage to Plaintiffs.  (Id. ¶ 14.)  Oxford returned this application to Green Giant three days later requesting that Francis sign the continuation of coverage forms.  (Id. ¶ 15.)  Plaintiffs signed this form and promptly returned it to Oxford.  (Id.)  On January 23, 2006, Green Giant faxed an addition/termination/change form to Oxford, notifying Oxford of the birth of Francis and Tina Campo's second child,

---

[2]  Green Giant is a nursery and landscape contractor and designer.

Domencia, on December 23, 2005 and requesting that Domencia be added as a dependant to Plaintiffs' health care coverage. According to Plaintiffs, despite completing all of the necessary paperwork required by Oxford and Green Giant, on February 22, 2006, Oxford informed Plaintiffs that their medical coverage had been cancelled effective December 27, 2005.  (Id. at ¶ 18.)

The cancellation of Plaintiffs' insurance came at a particularly inopportune time for Plaintiffs.  (Id. ¶ 13.)  Due to complications caused by a premature birth, Domencia Campo spent over six weeks in the Neonatalogy Intensive Care Unit at Kennedy Memorial Hospital in Stratford, New Jersey.  (Id.) According to a letter from Plaintiffs' counsel to Green Giant, Plaintiffs' lack of heath insurance resulted in Plaintiffs incurring over $300,000 in medical bills due to Domencia's extended hospital stay.  (Id. at ¶ 19; Ex. F.)

   **B.   Procedural History**

On July 26, 2006, Plaintiffs filed this action in Superior Court of New Jersey, Law Division, Camden County.  The Complaint contains seven counts against both Oxford and Green Giant including: (1) a violation of 29 U.S.C. § 1132(a)(1)(B) (also known as "Section 502(a)(1)(B)") for failure to provide Plaintiffs with the medical benefits to which they were entitled under an ERISA Plan (Count One); (2) failure by the plan administrator to provide requested information to a participant

in compliance with 29 U.S.C. § 1132(c) ("Section 502(c)")(Count Two); (3) failure to provide coverage to newly-born-children from the moment of birth in violation of N.J. Stat. Ann. 17B:27-30 (Count Three); (4) failure to provide an employee with requisite notice of the employee's continuation rights in the certificate of coverage prepared by the carrier in violation of N.J. Stat. Ann. 17B:27A-27(a) & (e) (Count Four); (5) violation of relief under 29 U.S.C. § 1332(a)(3) ("Section 502(a)(3)")(Count Five); (6) breach of Oxford's insurance policy (Count Six); and (7) breach of fiduciary duty under 29 U.S.C. § 1332(a)(3) ("Section 502(a)(3)") (Count Seven).

On September 15, 2006, Oxford removed this action to this Court. [Docket Item No. 1.]  On October 17, 2006 and again on October 27, 2006, Plaintiffs amended their complaint. [Docket Item Nos. 8, 11.]  On November 9, 2006, Oxford filed this motion to dismiss certain counts in the Second Amended Complaint under Fed. R. Civ. P. 12(b)(6).  [Docket Item No. 12.]  On December 19, 2006, upon application by Plaintiffs and with the consent of all parties, this Court stayed all proceedings for ninety (90) days so that the parties could seek to resolve this matter through mediation. [Docket Item No. 16.]  Mediation being unsuccessful, Plaintiffs filed opposition to Oxford's motion of April 10, 2007 to which Oxford replied on April 24, 2007.  [Docket Item Nos. 20,

22.]  The Court has considered all submissions and did not hear
oral argument on this motion.[3]

## II.    <u>STANDARD OF REVIEW</u>

A Rule 12(b)(6) motion to dismiss for failure to state a
claim upon which relief may be granted must be denied "unless it
appears beyond doubt that the plaintiff can prove no set of facts
in support of his claim which would entitle him to relief."
<u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  A district court
must accept any and all reasonable inferences derived from those
facts and must view all allegations in the complaint in the light
most favorable to the plaintiff.  <u>See</u> <u>Scheuer</u>, 416 U.S. at 236;
<u>Unger v. Nat'l Residents Corp. v. Exxon Co., U.S.A.</u>, 761 F. Supp.
1100, 1107 (D.N.J. 1991); <u>Jordan v. Fox, Rothschild, O'Brien &
Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).

In the complaint, it is not necessary for the plaintiff to
plead evidence, and it is not necessary to plead the facts that
serve as the basis for the claim.  <u>See</u> <u>Bogosian v. Gulf Oil
Corp.</u>, 561 F.2d 434, 446 (3d Cir. 1977).  When a motion to
dismiss is before the court, the question for the court is not
whether plaintiff will ultimately prevail; rather, it is whether

---

[3]  As discussed in note 1, <u>supra</u>, simultaneous with their
filing of opposition to Oxford's motion to dismiss, Plaintiffs
filed a motion for leave to amend the SAC in order to add two
additional individuals as defendants (Louis W. Cappucio and Diana
Perez).  The pendency of Plaintiffs' motion for leave to amend
does not impact this motion before the Court.

he or she can prove any set of facts in support of their claims
that would entitle them to relief.  See Hishon v. King &
Spalding, 467 U.S. 69, 73 (1984).  While the court is required to
take all of the allegations of fact as true, the court is "not
required to credit bald assertions or legal conclusions alleged
in the complaint," Jones v. Intelli-Check, Inc., 274 F. Supp. 2d
615, 625 (D.N.J. 2003), and need not accept conclusory
recitations of law.  Nappier v. Pricewaterhouse Coopers LLP, 227
F. Supp. 2d 263, 272 (D.N.J. 2002).

**IV.**  **DISCUSSION**

    **A.**  **Preliminary Matters**

    First, the parties in this action do not dispute that the
health benefits policy at issue is an ERISA Plan governed by
ERISA, 29 U.S.C. § 1001 et seq.  Second, the Court will grant
Oxford's motion and dismiss Count Five of the SAC as Plaintiff
concedes that the inclusion of Oxford as a defendant in this
Count was a typographical error.

    Third, in its motion to dismiss, Oxford relies on the
certificate of coverage (the "Certificate").  The Certificate
sets out the terms and conditions of Oxford's health benefits
policy (the ERISA plan).  The Certificate includes details about
health insurance coverage of employees and dependants, costs,
exclusions, procedures and most importantly to the motion before
the Court, the participant's continuation rights.  The

Certificate is provided through the Declaration of Maryanne Britto, a paralegal in the legal department of Oxford Health Insurance Company.  (Cert. of Maryanne Britto Cert. ¶¶ 1-2.)  The Certificate was included in Oxford's motion to dismiss.  Because materials outside of the pleadings are generally not considered when the Court decides a motion to dismiss, this Court must first determine whether to consider the Certificate as part of Oxford's motion.

When deciding a motion to dismiss pursuant to Rule 12(b)(6), courts "generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir. 2004)(citing Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)); see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); Three Keys Ltd. v. SR Util. Holding Co., 464 F. Supp. 2d 388, 396 (D.N.J. 2006).  A document forms "the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.'"  Lum, 361 F.3d at 222 (citing Burlington Coat Factory, 114 F.3d at 1426.) The purpose of this rule is "to avoid the situation were a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document."  Id.

8

Here, the Court finds that reliance on the Certificate is appropriate because the document is "integral to or explicitly relied upon in the complaint."  Specifically, the SAC states that the action alleged "involves a claim for unpaid medical benefits under the ERISA plan (the 'Plan')."  (SAC ¶ 2.)  The Certification sets forth the terms and conditions that the Court must use to determine whether a participant or beneficiary is entitled to benefits or who among the parties is responsible for which portions of the plan and thus, it is "integral to or explicitly relied upon" in Plaintiffs' claim under Section 502(c).  Certainly it is not unfair for the Court to use the Certificate in deciding Oxford's motion to dismiss because Plaintiffs were on notice that the document would be considered by the Court in assessing the validity of Plaintiffs' claims.  Consequently, the Court will consider the terms and conditions of the Certificate in deciding Oxford's motion to dismiss.

**B.     Claims under 29 U.S.C. § 1332(c)(1) of ERISA (Second Count)**

In Count Two of the SAC, Plaintiffs allege that Oxford failed to comply with Plaintiffs' counsel's request for information and refused to provide an explanation as to why certain medical benefits and continuation coverage under COBRA were not being provided.  (SAC ¶ 25.)  Plaintiffs contend that this failure to comply is a violation of Section 502(c) and that

Oxford is liable for a $110 per day penalty pursuant to Section 502(c)(1).  (<u>Id.</u> at ¶¶ 28-29.)

In its motion, Oxford argues that Count Two should be dismissed against Oxford because only a plan administrator can be liable for violating Section 502(c) and Oxford is not the plan administrator of Green Giant's ERISA plan.  In support of its position, Oxford points to the Certificate, which provides that Green Giant, not Oxford is the plan administrator. As such, only Green Giant -- and not Oxford -- may be liable under Section 502(c) for failing to provide Plaintiffs with certain information.  (Def.'s Br. at 2-3 citing <u>Ross v. Rail Car Am. Group Disability Income Plan</u>, 285 F.3d 735, 743-44 (8th Cir. 2002)).

In opposition, Plaintiffs argue that Oxford's argument fails because Oxford can be considered the <u>de</u> <u>facto</u> plan administrator for the purposes of Section 502(c).[4]  According to Plaintiffs, administrative functions, such as administration of the plan, can be delegated; when they are delegated, that party may be deemed to be the <u>de</u> <u>facto</u> plan administrator.  (Pl.'s Br. at 1-2.) According to Plaintiffs, a <u>de</u> <u>facto</u> plan administrator may be held liable under Section 502(c).

---

[4]  Plaintiffs also contend that Oxford's argument fails because it relies on facts outside the pleadings.  This argument, however, was already addressed and rejected in Section IV.A, <u>supra</u>.

Under Section 502(c)(1), a court can impose a penalty of up to $110 per day against "any administrator . . . who fails or refuses to comply with a request for any information which such administrator in required [by ERISA] to furnish to a participant or beneficiary . . . ." 29 U.S.C. § 1132(c)(1). Thus, under ERISA, the Plan Administrator is responsible for providing plan documents to participants and beneficiaries upon their request. Ross, 285 F.3d at 744. Under ERISA, an "administrator" is defined as either (1) the person specifically so designated by the terms of the ERISA plan or (2) if an administrator is not so designated, the plan sponsor. Id. § 1002(16). The "plan sponsor" is defined, in pertinent part, as "the employer in the case of an employee benefit plan established or maintained by a single employer . . . ." Id.

Upon reviewing the Certificate, it is clear that Green Giant, and not Oxford, is the Plan Administrator. The Certificate does not expressly identify a Plan Administrator, but does define the "plan sponsor" as "the Small Employer in the case of an employee benefits plan established or maintained by a single employer." (Certificate at 10.) "Small Employer," in turn, is defined in part as "any person, firm, corporation, partnership or political subdivision, that is actively engaged in business that employs an average of at least two but not more than 50 Eligible Employees . . . ." (Certificate at 11.) Under

11

this construction of the ERISA Plan, Green Giant –- the only entity that applied for and purchased the health benefits plan –- is the Plan Administrator.  Consequently, because it is not the Plan Administrator, Oxford cannot be liable under Section 502(c).

In their opposition, Plaintiffs appear to concede that Oxford is not the plan administrator according to the Certificate, arguing instead that Oxford served as the ERISA plan's de facto administrator and can be held liable under Section 502(c) as the de facto administrator.  While the Third Circuit has not yet ruled on the issue of the de facto plan administrator theory, this Court notes that the majority of Courts of Appeals that have addressed this issue have rejected this theory.  See Ross, 285 F.3d at 743-44 (Eighth Circuit); see also Jones v. UOP, 16 F.3d 141, 144-45 (7th Cir. 1994)("The First Circuit, and possibly the Fifth and Eleventh, are willing to deem nonadministrators 'de facto' plan administrators; the other circuits (except the Third and the Eighth, which have not been heard from on this issue) are not."); Lee v. Burkhart, 991 F.2d 1004, 1010 (2d Cir. 1993); McKinsey v. Sentry Ins., 986 F.2d 401, 403-05 (10th Cir. 1993);  Coleman v. Nationwide Life Ins. Co., 996 F.2d 54, 62 (4th Cir. 1992); VanderKlok v. Provident Life & Acc. Ins. Co., 956 F.2d 610, 617-18 (6th Cir. 1992); Moran v. Aetna Life Ins. Co., 872 F.2d 296 (9th Cir. 1989); but see Law v. Ernst & Young, 956 F.2d 364, 373 (1st Cir. 1992); Rosen v. TRW,

Inc., 979 F.2d 191, 193-94 (11th Cir. 1992).  This Court declines
to adopt the minority view recognizing a non-administrator as the
de facto plan administrator that can be held liable under Section
502(c).  To do so would require the Court to ignore the statutory
language that imposes a duty on the plan's "administrator" alone.
See Lee, 991 F.2d at 1010 ("ERISA undoubtedly requires that
participants be told who has the financial obligation to fund the
plans . . . [b]ut that obligation is placed on the person
designated under ERISA as the "administrator" of the plan, not on
every fiduciary.)[5]  Thus, the Court will grant Oxford's motion to
dismiss Count Two of the SAC.

### C.   Claims under N.J. Stat. Ann. 17B:27A-27 (Fourth Count)

In Count Four of the SAC, Plaintiffs claim that Oxford
failed to provide notice of Plaintiffs' continuation rights in
the Certificate and that such a failure was a violation of N.J.
Stat. Ann. 17B:27A-27. (Compl. ¶¶ 36-39.)  Oxford argues that the

---

[5]  The Lee court goes on to discuss the First Circuit's
holding in Law and the Eleventh Circuit's holidng in Rosen,
stating that:

Some courts have held that under certain circumstances
a party not designated as an administrator may be
liable for failing to furnish a plan description.  We
disagree. Respect for our proper role requires that we
decline . . . to substitute our notions of fairness for
the duties which Congress has specifically articulated
by imposing liability on the "administrator."

Id. at 1010 n.5.

Certificate fully explains Plaintiffs' continuation rights and
provides sufficient notice of Plaintiffs' rights.  Specifically,
Oxford points to the section of the Certificate titled "New
Jersey Group Continuation Rights" that explains that only the
employer has an obligation to provide notice to an employee
regarding continuation of benefits.  (Def.'s Br. at 3.)
According to Oxford, because the Certificate complies with N.J.
Stat. Ann. 17B:27A-27(e), the Court should dismiss this count
against Oxford.  Plaintiffs argue that their claims under Count
Four should survive as "there is no evidence as to when (or
whether) [the Certificate] was provided to Plaintiffs."  (Pl.'s
Opp. Br. at 3.)

    N.J. Stat. Ann. 17B:27A-27 requires that:

    Every policy or contract issued to a small employer in
    [New Jersey], including, but not limited to, policies
    or contracts which are subject to this act . . . shall
    offer continued coverage under the plan to any employee
    whose employment was terminated for a reason other than
    for cause . . . .

N.J. Stat. Ann. 17B:27A-27(a)(1).  In addition, N.J. Stat. Ann.
17B:27A-27(e) outlines specific requirements of both the
insurance carrier and the employer with respect to notifying the
employee of his or her continuation rights.  Specifically, N.J.
Stat. Ann.  17B:27A-27(e) states:

    Notice shall be provided to employees in the
    certificate of coverage prepared for employees by the
    carrier on or about the commencement of coverage and by
    the small employer at the time of the qualifying event
    as to their continuation rights under the plan. A

> qualified beneficiary may elect continuation coverage
> offered pursuant to this section no later than 30 days
> after the qualifying event.

Id. at 17B:27A-27(e).  Thus, under Section 17B:27A-27(a) and (e),
the carrier is obligated to (1) offer continued coverage under
the plan to any employee whose employment was terminated for a
reason other than for cause and (2) provide notice of these
continuation rights to employees in the certificate of coverage
prepared for employees.  The employer, in contrast, is required
to provide notice of the employee's continuation rights "at the
time of the qualifying event."  Id. at 17B:27A-27(e).

### 1.   Oxford has complied with its obligations under N.J. Stat. 17B:27A-27(a)(1)

A review of the Certificate shows that Oxford has complied
with the requirements set forth in 17B:27A-27(a) because the
Certificate explains in detail that Oxford offers continued
coverage under the ERISA plan.  To be sure, under the heading
"Continuation Rights," the Certificate outlines the terms and
conditions of coverage if the employee elects to continue his or
her group health benefits, (Certificate at 38), the employee's
and employer's responsibilities related to obtaining continuation
rights, (Certificate at 39-40) and specifics related to the
election of continuation, (Certificate 40).

2. **Oxford need not demonstrate compliance with N.J. Stat. 17B:27A-27(e) as this state law is preempted by ERISA**

The Court's analysis with respect to Oxford's obligations under N.J. Stat. Ann. 17B:27A-27(e) (<u>i.e.</u>, to provide notice of the right to elect continued coverage in the certificate "at the commencement of coverage") is more complicated.  Whether Oxford provided Plaintiffs with such information at the commencement of coverage is a factual issue, and the Court cannot, at this stage in the litigation, determine whether Oxford has or has not complied.  However, the Court finds that ERISA preempts New Jersey state law (specifically N.J. Stat. Ann. 17B:27A-27(e)) with respect to an insurance carrier's obligation to deliver plan documents.

ERISA contains a broad preemption provision.  29 U.S.C. § 1144(a) (also known as "Section 514(a)") provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ."  29 U.S.C. § 1144(a).[6]  In <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, (1987), the Supreme Court gave Section 414(a) a broad reading, stating: "[T]he phrase 'relate to' [is] given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a

---

[6]  However, this broad preemption provision is not without qualification as ERISA excepts from preemption laws that "regulate insurance." 29 U.S.C. § 1144(b)(2)(A).

16

connection with or reference to such a plan." Id. at 47 (quoting Metropolitan Life Ins. Co. v. Mass., 471 U.S. 724, 739 (1985) (internal quotation marks omitted)); Kollman v. Hewitt Assocs., L.L.C., 2007 U.S. App. LEXIS 11272, *21-22 (3d Cir. 2007).  The Third Circuit Court of Appeals has held that, in determining the preemption question, a court must determine congressional intent because it is "the ultimate touchstone" and consider that the purpose of the ERISA preemption provision is the "eliminat[ion of] claims that would interfere with the ERISA plans." Kollman, 2007 U.S. App. LEXIS 11272 at *23-34 (quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133 (1990)).

This Court is guided by the decision of Howard v. Gleason Corp., 901 F.2d 1154, 1157-58 (2d Cir. 1990) in which the Second Circuit held that 29 U.S.C. § 1024(b) preempts a New York state law that is similar to N.J. Stat. Ann 17B:27A-27(e).  Section 1024(b) is the ERISA provision that sets forth the content and timing of notice of an ERISA plan to be given to plan participants.  In Howard, the court addressed a New York statute that provided that, where a group insurance policy affords the certificate holder the right to convert the group policy to an individual policy upon the happening of an event, the holder must be notified of the conversion option within fifteen days of a triggering event.  Id. at 1157.  Under this New York law, notice must be given by either the insurer or the policyholder (the

employer).  In holding that ERISA preempts this law, the court
held that:

> But ERISA also contains elaborate provisions setting
> forth the content and timing of notice of such plan
> information to be given to plan participants. 29 U.S.C.
> §§ 1022, 1024(b).  A state law that purports to impose
> on an employer obligations of the same general type as
> those imposed by ERISA cannot be said to have only a
> "remote" or "tenuous" effect on the plan.  The
> conversion option is a benefit of the Plan, and [the
> New York law] regulates the notice that must be
> provided to employers concerning the existence and
> exercise of that option.  The state's notice
> requirement directly affects a primary administrative
> function of the benefit plan.  It requires employers to
> permanently track employees and the events that trigger
> the conversion option and then to send timely
> conversion notices.

Id. at 1157-58.  The Howard court continued, stating that the co-
existence of the New York law and Section 1024(b) of ERISA would
be contrary to the purposes of ERISA.  Id. at 1158 ("[W]ithout
preemption, employers with multistate operations would be faced
with different notice obligations in different states. This is
precisely the patchwork scheme of regulation among the several
states that ERISA was designed to avoid and that is inconsistent
with the 'the goal of ERISA to provide uniform, national
regulation of benefit plans.'")

     The analysis of the Howard court is applicable here, and the
Court holds that Section 1024(b) of ERISA preempts N.J. Stat. Ann
17B:27A-27(e).  Section 1024(b) contains a comprehensive scheme
outlining what information about an ERISA plan must be provided
to participants and beneficiaries at the commencement of the plan

18

and who is responsible for providing such information.[7]  It is also clear that the regulation of disclosure required in Section 17B:27A-27(e) "relates to" a benefits plan as this state law places additional requirements of disclosure on insurance carriers not contained in the Section 1024(b).  Requiring compliance with dual disclosure requirements would be antithetical to Congress' purpose of providing a uniform, national regulation of benefit plans.

Thus, Plaintiffs' claims under Count Four shall be dismissed because (1) Oxford has complied with the requirements of N.J. Stat. Ann. 17B:27A-27(a) and (2) Oxford need not comply with the requirements of N.J. Stat. Ann. 17B:27A-27(e) because this state law is preempted by 29 U.S.C. 1144(b).

---

[7]  Section 1024(b) provides, in pertinent part:

(b) Publication of summary plan description and annual report to participants and beneficiaries of plan. Publication of the summary plan descriptions and annual reports shall be made to participants and beneficiaries of the particular plan as follows:

(1) The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes referred to in section 102(a) --

(A) within 90 days after he becomes a participant, or (in the case of a beneficiary) within 90 days after he first receives benefits, or

(B) if later, within 120 days after the plan becomes subject to this part.

29 U.S.C. § 1024(b).

**D.   Breach of Fiduciary Duty (Count Seven)**

In Count Seven, Plaintiffs allege that both Oxford and Green Giant are "fiduciaries" vis-a-vis the Plaintiffs and may not mislead plan participants nor misrepresent the terms or administration of the plan.  (SAC ¶ 53.)  According to Plaintiffs, neither Oxford nor Green Giant provided Plaintiff with any information regarding the manner and means by which continuation coverage under Oxford's policy could be obtained, and both failed to alert Plaintiffs that their insurance coverage was in danger of termination.  (Id. ¶ 55.)  These activities, Plaintiffs allege, constitute a breach of Oxford's fiduciary duty in violation of Section 502(a)(3).[8]

In their motion papers, Oxford argues that, because the Certificate shows that Oxford did not have any duty to provide Plaintiffs with information about continuation coverage, the Court should dismiss this claim.  Oxford argues that an ERISA fiduciary may be liable for breaching fiduciary duties only to the extent that the conduct falls within the scope of his fiduciary duties, see 29 U.S.C. § 1109, and here, under the Certificate only Green Giant had an obligation to tell Plaintiffs

---

[8]  Section 502(a)(3) of ERISA provides that a plan participant may bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(3).

20

how to continue benefits.  Thus, according to Oxford, it cannot be held responsible for the alleged failure to notify.

ERISA provides that a participant or beneficiary may bring a civil action for breach of fiduciary duty.  See 29 U.S.C. § 1332(a)(3).  In order to state a claim, a plaintiff must allege that (1) the defendant was a fiduciary of an ERISA plan and (2) the defendant breached its fiduciary duty obligations.  See Daniels v. Thomas & Betts Corp., 263 F.3d 66, 73 (3d Cir. 2001); Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Research Found., 334 F.3d 365, 384 (3d Cir. 2003).  A fiduciary, under ERISA is defined as a person who, with respect to an ERISA plan:

> (i) . . . exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) . . . renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) . . . has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

For the purposes of this motion, the Court will assume that Oxford is a fiduciary of the ERISA plan.  With this in mind, the Court must now review whether Oxford breached its fiduciary duty under the plan when if failed to provide Plaintiffs with information regarding continuation coverage and failed to alert Plaintiffs that their insurance coverage was in danger of

termination as alleged in the SAC.  (SAC ¶ 55.)  The Third
Circuit has held that "[w]hen interpreting ERISA plans, the
starting point is the 'words of the [p]lan' and the parties
remain bound by the 'appropriate objective definition of the
words they use to express their intent.'"  Henglein v. Colt
Indus. Operating Corp. Informal Plan, 91 Fed. Appx. 762, 766 (3d
Cir. 2004)(internal citations omitted).  In this case, the
Certificate includes a detailed section describing the plan's
continuation rights.  (Certificate at 37-42).  The Certificate
describes the benefits that are available to a plan participant,
what elections an employee/participant may make as a result of
the ending of an employee's group health benefits, what steps a
beneficiary must take if an employee/participant dies (called the
"qualified continuee" for the purposes of this section of the
Plan) and what steps an employer must take in order to establish
such continuation coverage.  (Id. at 39.)  With respect to notice
of the right to continuation coverage, the Certificate puts this
burden on the employer, stating that, within forty-four days of
the ending of the group health benefits or termination of
employment:

> The Employer [Green Giant] must notify the Qualified
> Continuee, in writing, of (a) his or her right to
> continue the Policy's group health benefits; (b) the
> monthly premiums he or she must pay to continue such
> benefits; and (c) the times and manner in which such
> monthly payments must be made.

(Id. at 40.)

Thus, even if Oxford is considered a fiduciary with respect to certain aspects of the ERISA plan, the duty to provide notice of the benefit of continuation at the conclusion of Francis Campo's employment was the duty of Green Giant (the employer), not Oxford (the insurer).  Oxford was never Francis Campo's employer and had no duty to provide him with notice regarding continuation.  Instead, the duty to provide this notice was specifically allocated to Green Giant as the named employer.  Thus, Oxford did not breach any fiduciary duty, and Plaintiffs' claim under Count Seven will be dismissed.[9]

## V.   **CONCLUSION**

For the reasons set forth in this Opinion, this Court will grant Oxford's motion to dismiss.  The Court will grant Oxford's motion and dismiss Count Five of the SAC because Plaintiff concedes that the inclusion of Oxford as a defendant in this Count was a typographical error.  Moreover, the Court will grant

---

[9]  The Court notes that both Plaintiffs and Oxford cite the case of <u>Canada Life Assur. Co. v. Estate of Lebowitz</u>, 185 F.3d 231 (4th Cir. 1999) in support of their positions regarding Plaintiffs' breach of fiduciary duty claim.  This Court does not find this decision, which serves only as persuasive authority upon this Court, of any guidance in rendering its decision in this matter or supportive of either parties' position.  The Court finds this case factually distinguishable as the plain language of the ERISA plan in <u>Canada Life</u> requires the insurer to provide written notice to the employee of the employee's right to convert.  <u>Canada Life Assur. Co.,</u> 185 F.3d at 235-36, 237.  Here, Plaintiffs attempt to hold Oxford liable for breach of fiduciary duty in failing to alert them of continuation rights despite the fact that the plain language of the Plan places this burden on Green Giant.

Oxford's motion and dismiss Counts Two, Four and Seven because Plaintiffs fail to state a claim against Oxford.

The accompanying Order is entered.


**June 26, 2007**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge